## Case No. 12,675.

### SETON v. DELAWARE INS. CO

[2 Wash. C. C. 175.] [1]

Circuit Court, D. Pennsylvania. April Term. 1808.

EVIDENCE—PROOF OF FOREIGN LAWS—MARINE INSURANCE—CONSTRUCTION OF POLICY—PARTIAL LOSS.

1. Parol evidence. to prove the regulation of Cuba, prohibiting the exportation of specie, will not be admitted. unless evidence is given of efforts to obtain a certified copy of the written law, which have failed.

[Cited in Sidwell v. Evans, 1 Pen. & W. 388.]

1 [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters. Jr.. Esq.]

2. If the written and printed clauses of a policy of insurance can be made to stand together, and both be available, such an exposition of them should be adopted.

[Cited in The Orient, 16 Fed. 920.]

3. A partial loss of an entire cargo, by sea damage, if amounting to more than fifty per cent., may. under circumstances, be converted into a technical total loss; but not if a distinct part of the cargo be destroyed, and the voyage be not thereby broken up, or rendered unworthy of being prosecuted.

[Cited in Forbes v. Manufacturers' Ins. Co., 1 Gray, 375.]

Action on four policies of insurance: two on the cargo underwritten, for 11,000 dollars, and the other valued at 1,000 dollars, on board the William, at and from New-York to Baracoa, Nevitas, and Matanzas, in the island of Cuba, and back; to return one per cent. for all ports she shall not stop at; declared, in a written clause, to be on goods and specie, both or either valued on the voyage outward at 12,000 dollars, with the usual printed clause of warranty against any charge or loss on account of any illicit or prohibited trade. The third policy is on the ship, and the fourth on the freight for the same voyage, also valued; the one at 4,000 dollars, and the last at 2,000 dollars, with like stipulations for return of premium and warranty. The vessel sailed from New-York on the voyage insured, touched at Baracoa, and thence proceeded to Nevitas, where she disposed of her outward cargo, and took in a return cargo of goods, and 5,000 dollars in silver, besides upwards of 1,000 dollars of the sum she carried outward. She sailed from Nevitas on her return voyage, but by stress of weather, and injury sustained, she was compelled to put into Matanzas, where the 5,000 dollars taken in at Nevitas. being more than half the value of the cargo. were landed by order of the governor; the supercargo was permitted to lay out the money in the produce of the island, and to take it away; but he was refused permission to carry away the specie. Upon the petition of the captain to the subdelegate of the royal hacienda at Havana, setting forth that he had received regular clearances at Nevitas for the specie, and that it was seized, that officer decreed that the specie should not be taken away; stating in his decree, that specie was prohibited by law to be carried away, but permitting the same to be laid out in colonial produce. Upon this, the supercargo laid out about half of the 5,000 dollars in sugars, which filling the vessel, he deposited the balance of the silver with a merchant at Matanzas, who afterwards laid it out in sugars, and sent them by another vessel, the Charlotte, to New-York. Regular protest being made. the ship left Matanzas, and arrived safe at New-York, with the loss of part of her cargo, which had been thrown overboard in a storm. She arrived on the 20th of December, 1806. A regular abandonment of ship, cargo, and freight, was offered and refused; but the

plaintiff was authorized by the defendants to dispose of the vessel and cargo, as well that brought in the William, as the sugar afterwards sent in the Charlotte, without prejudice. On these sales a loss was· sustained, as stated by the plaintiff, to the amount of upwards of 8,000 dollars. To prove that this was a prohibited trade, the defendants offered to examine a witness. This was opposed, and [Church v. Hubbart] 2 Cranch [6 U. S.] 187, 236, relied· upon, to prove that the law or order of the governor should be produced.·

THE COURT rejected the evidence. This is a commercial regulation of the government, and a subject of pure municipal arrangement. The law must be presumed to be written, and therefore it should be produced; or evidence given to prove that it was not in the party's power to obtain a certified copy of it; in which case inferior evidence might be received.

Mr. Dallas, for plaintiff, upon the court intimating, that, as to the vessel, there was no ground of abandonment, she having performed her voyage in safety, and even arrived before the offer made, gave it up, and claimed only for a partial loss. As to the cargo, he insisted that the clearance was evidence of the legality of the trade; but if not so, the written clause, which insures specie out and home, overrules the printed clause of the warranty; and as the defendants knew, or ought to have known, that it was ·prohibited, they are bound, the policy, insuring a trade prohibited by foreign laws, is good. Park, Ins. 235. As to the freight, he argued that the right to it on the whole cargo having once attached, the loss of so great a proportion, by a peril insured against, amounted to a total loss.

Rawle & Condy, for defendants. If there had been no clause in the policy, to exempt the defendants from indemnifying against losses incurred, in consequence of any illicit or prohibited trade; yet, upon general principles, such a trading would have exonerated the underwriters. 2 Vern. 176; 4 Bac. Abr. 643; 1 Johns. 20. That this was a prohibited trade, is proved by the best evidence, the sentence of the hacienda, a revenue tribunal, uniting judicial with executive powers. The true exposition of ·the policy is, that if the goods shipped, and the specie, should be subjects of lawful trade, then the underwriters were to be liable, in case of loss; otherwise not. But, at all events, the plaintiff could not abandon. The loss of part of the cargo only, if the vessel with the balance arrived safe, can only be a partial loss.

WASHINGTON, Circuit Justice (charging jury). The question of law is, whether the plaintiff is entitled to recover for a total or a partial loss on cargo and freight. Upon the construction of the policy, it is said that the written must control the printed clause, if they contradict each other. This is true.

There are strong reasons in favour of the position. But the construction of policies of insurance, is governed by the same rules as apply to other written instruments; and if all the clauses can be fairly made to stand together, and to have effect, they should be so expounded as to produce such a result. We understand the underwriters, from the language they have used, to say, we will insure you against loss upon any goods or specie, both or either on ·the voyage from New-York to the enumerated ports in Cuba, and back to New-York. As to the cargo, generally, it is impossible for us to know whether it may in whole or in part be composed of prohibited articles, or not; and,· therefore, we will not engage to indemnify against losses arising from such trade, if it should be illicit. But as to specie, the specified article, we know that it is, by the general commercial regulations of the Spanish government, prohibited from being exported, and therefore we except it from the clause of warranty. We say, that this ought to be understood as the language of the underwriters; because, as to the course of trade, and the general laws of the country with which this trade was to be carried on, they were bound to take notice; and if it was not their intention to except specie from the warranty, it is impossible to suggest a reason for its being especially mentioned: since it would clearly have been comprehended under the general term goods,· used in the same clause. Still, the question is, can the plaintiff recover for a total loss of cargo and freight, in consequence of the detention of the 5,000 dollars at Matanzas? The opinion of the court is, that he cannot. The loss is not total, either in fact, or technically so. A part of the cargo was taken out, forcibly, at Matanzas, and replaced by other articles; with which, and the residue of her cargo taken in at Nevitas, she arrived, fully loaded, in safety at her port of destination. The original cargo, taken in at Nevitas, received no kind of injury from any thing which happened at Matanzas; and the only consequence of the proceedings at that place, was the exchange of a part of the cargo, the whole of which arrived safe, partly in this vessel, and the residue of the new cargo by another. Now, can it be seriously contended, that the loss of a distinct and separate part of the cargo, by the seizure· of a foreign government, though it amount to more than half of the whole ·cargo, will warrant an abandonment of the, whole, when the residue has in fact been discharged, and has arrived safe? A partial loss of an entire cargo, by sea damage, if amounting to more than half, may, under circumstances, be converted into a technical total loss; but not if a distinct part of the cargo be destroyed, and the voyage be not thereby broken up, or rendered unworthy of being prosecuted. Here the voyage was not lost, or otherwise impaired or affected, but in respect to the particular part of the cargo

exchanged at Matanzas. We inquired of the plaintiff's counsel, if he recollected any case in which such a loss had been construed total; and the only one to which he referred us, was that of Simond v. Union Ins. Co. (decided in this court) [Case No. 12,875]. But there is no similitude between that and this case. In that, the vessel was not only prevented by a blockading squadron off one of her ports in St. Domingo, from entering either; but she was forcibly carried to Jamaica, and there compelled to end her voyage, and to dispose of her cargo. There, the voyage was broken up, and completely frustrated; quite otherwise is the present case. We do not recollect a single case, from Goss v. Withers, 2 Burrows, 683, to this time, or before, in which, from an injury to the cargo, the loss was considered total, that the voyage was not broken up by some disaster to the vessel, which could not be repaired without great additional expense and loss; or which prevented the further prosecution of the voyage; or where the injury to the cargo was general. The doctrine of abandonment has gone far enough, perhaps too far, when the real nature of the contract of insurance is considered. We do not feel disposed to carry it further. The opinion of the court, therefore, is, that the plaintiff is entitled to recover only for a partial loss.

The jury found that the plaintiff was entitled to a partial loss, which the parties agreed to adjust.